**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Cristal Arias,<br><br>        Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>        Defendant. | No. CV-21-01793-PHX-DLR<br><br>**ORDER** |

       On November 21, 2016, Claimant Cristal Arias applied for Supplemental Security Income alleging disability beginning January 1, 1996. (AR. 420–28.) Arias subsequently amended her alleged onset date to January 31, 2010. (AR. 429–30.) The Acting Commissioner of Social Security denied Arias' application initially and on reconsideration. (AR. 141–45, 157–73.) Arias requested an administrative hearing before an Administrative Law Judge ("ALJ"). She appeared at one on June 20, 2019, and at a supplemental hearing on February 4, 2020. (AR. 49–98.) After the case was reassigned to a different ALJ, Arias appeared at a third hearing on October 2, 2020. (AR. 101–39.) The ALJ issued an unfavorable decision on February 25, 2021, finding Arias not disabled within the meaning of the Social Security Act ("SSA"). (AR. 17–36.) The Appeals Council denied review of that decision, making the ALJ's decision the final decision of the Commissioner of the Social Security Administration. (AR. 1–3.) Arias seeks judicial review of the

Commissioner's decision under 42 U.S.C. § 405(g). Having reviewed the briefs (Docs. 18, 21, 22) and the Administrative Record, the Court now affirms the ALJ's decision.

## I.     Legal Standard

To determine whether a claimant is disabled for the purposes of the SSA, the ALJ must follow a five-step sequential evaluation. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof at the first four steps, but burden then shifts to the Commissioner at the fifth step. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

At step one, the ALJ determines whether the claimant is engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is engaged in substantial, gainful work activity, she is not disabled, and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment—or combination of impairments—that meets the duration requirement. *Id.* § 404.1520(a)(4)(ii). If the claimant does not, she is not disabled. *Id.* If, however, the claimant has such an impairment, the ALJ proceeds to step three, where the ALJ considers whether the claimant's impairment or combination of impairments meets, or is medically equal to, an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *Id.* § 404.1520(a)(4)(ii). If so, the claimant is disabled and entitled to benefits under the SSA. *Id.* If not, the analysis proceeds to step four, at which the ALJ assesses the claimant's residual functional capacity ("RFC") and determines whether the claimant is still capable of performing past relevant work. *Id.* § 404.1520(a)(4)(iv). If the claimant is capable of such work, the claimant is not disabled and inquiry ends. If not, the ALJ proceeds to fifth and final step, where the ALJ determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. *Id.* § 404.1520(a)(4)(iv). If claimant is not capable of such work, the claimant is disabled and is entitled to benefits. *Id.*

A district court will uphold an ALJ's decision "unless it contains legal error or is not supported by substantial evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). "Substantial evidence is more than a mere scintilla but less than a preponderance" and is

such that "a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Burch v. Burnhart*, 400 F.3d 676, 679 (9th Cir. 2005)). As a general rule, a court will uphold an ALJ's decision if the "evidence is susceptible to more than one rational interpretation." *Id.* That said, the court should "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Id.* Additionally, a court only reviews the issues raised by the party challenging an ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001).

**II.    Analysis**

Arias raises five arguments for the Court's consideration: the ALJ erred in (1) failing to find that Arias' seizure disorder met or equaled Listing 11.02 of 20 C.F.R. Part 404, Subpart P, Appendix 1; (2) discrediting some of Dr. Dane Higgins' opinions; (3) discrediting Arias' symptom testimony; (4) discrediting lay witness testimony; and (5) failing to support her step five finding of "not disabled" with substantial evidence. The Court affirms the ALJ's decisions for the reasons herein.

**A. ALJ's Step-Three Finding**

At step three, an ALJ must determine whether a claimant's impairments meet or medically equal the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. § 416.925(d). At issue here is whether the ALJ properly concluded that Arias' seizure impairment does not meet Listing 11.02. To be considered disabled under Listing 11.02, a claimant must have documented descriptions of a typical seizure. Listing 11.02 describes the characteristics of four types of seizures, each including a required frequency of seizure occurrence. 20 C.F.R. Part 404, Subpart P, Appendix, Listing 11.02. For example, one of the four types of seizures listed is "[g]eneralized tonic-clonic seizures . . . occurring at least once a month for at least 3 consecutive months . . . despite adherence to prescribed treatment." *Id.*

Appendix 1 explains how an ALJ is to count a claimant's seizures with respect to Listing 11.02. It provides,

> When we evaluate the frequency of your seizures, we also consider your adherence to prescribed treatment. . . . We do not

> count seizures that occur during a period when you are not adhering to prescribed treatment without good reason. . . .We will consider you to have had good reason for not following prescribed treatment if, for example, . . . you are unable to afford prescribed treatment that *you are willing to accept*, *but for which no free community resources are available*.

20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 11.00(H)(4) (emphasis added).

Here, the ALJ determined Arias' condition did not meet or equal criteria for Listing 11.02 because, while adhering to prescribed treatment, Arias did not have seizures at the required frequency. The ALJ acknowledged that "[a]lthough the frequency of the claimant's seizures exceeded the level set forth in listing 11.02 in 2013 and 2014, it is noted throughout those records that the claimant was unable to comply with prescribed treatment due to financial difficulty." (AR. 23.) As a result, the ALJ did not count Arias' seizures from this period of time; instead, the ALJ considered the frequency of Arias' seizures once she began adhering to prescribed treatment. (*Id.*) The ALJ noted that when Arias was taking her anti-epilepsy medication as prescribed, there was a "marked decrease" in her seizure frequency such that she had not had a seizure since 2014. (*Id.*) During this period of time, Arias' seizures did not occur at the required frequencies listed under 11.02 and thus Arias' epilepsy did not meet the criteria for Listing 11.02.

Arias contends that the ALJ erred in considering the frequency of her seizures when she was on medication, rather than the frequency of her seizures in 2013 and 2014 when she was unable to afford medication. She argues that because an inability to afford treatment is an acceptable reason for failing to adhere to prescribed treatment, the ALJ should have considered her seizure frequency in 2013 and 2014.

Substantial evidence supports the ALJ's finding. As Appendix 1 explains, an ALJ will count seizures that occur during a period when a claimant is not adhering to prescribed treatment *if the claimant has a good reason* for not following the treatment. One such reason is an inability to afford treatment that a claimant is "willing to accept, but for which no free community resources are available." Here, substantial evidence supports the ALJ's decision to not count Arias' seizures during 2013 and 2014. Even if Arias could not afford

treatment, the record shows that community resources were available to support her adherence to prescribed treatment. The medical records the ALJ expressly referred to as noting Arias' financial difficulty also note that Arias' doctor directed her to a patient assistance program to help her afford and adhere to treatment. (*See e.g.*, AR. 821 ("I had a long talk with the patient . . . about the importance of taking her medication and the fact that if she is unable to afford it, we can send them to patient assistance program.")). Indeed, Arias began using the patient assistance program to receive her medication. (S*ee e.g.*, AR. 822–24.) And once she did, there was a "marked decrease" in the frequency of Arias' seizures. (*Id.*) Substantial evidence supports the ALJ's conclusion that Arias' seizure frequency *despite adherence to treatment* did not meet the requirements under Listing 11.02.

### B. Dr. Higgins' Opinions

Because Arias' claim was filed before March 27, 2017, pre-2017 SSA regulations apply. 20 C.F.R. § 404.1527. These regulations divide medical opinions into three categories: treating physicians, examining physicians, and non-examining physicians. *Valentine v. Comm'r, Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009). Generally, the opinion of an examining physician is "entitled to greater weight than the opinion of a nonexamining physician." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). If the opinion of an examining physician is uncontradicted, the ALJ can only reject the opinion for "clear and convincing reasons." *Id.* at 830. If, however, the examining physician's opinion is contradicted, the ALJ must provide "specific and legitimate reasons that are supported by substantial evidence in the record" for rejecting the opinion. *Id.* at 830–31.

Arias contends the ALJ improperly rejected the medical opinions of Dr. Dane Higgins, Arias' neuropsychologist. Dr. Higgins examined Arias on two occasions and provided multiple medical opinions for review. The ALJ weighed each of Dr. Higgins' opinions separately. The parties do not dispute that the ALJ could only reject Dr. Higgins' opinions for specific and legitimate reasons supported by substantial evidence in the record.

(Doc. 18, 21.) Rather, Arias contends that the ALJ failed to give adequate reasons for discounting some of Dr. Higgins' statements and opinions. The Court disagrees.

1. Dr. Higgins' Opinions from May 15, 2018, and June 12, 2019

On May 15, 2018, Dr. Higgins opined that Arias has severe limitations in all areas of mental functioning. (AR. 941–43.) Dr. Higgins opined the same thing the following year, on June 12, 2019. (AR. 1072–74.) The ALJ afforded these opinions "little weight," noting the inconsistency between Dr. Higgins' opinion and his own objective testing of Arias.

Inconsistency between an examining consultant's opinion and objective medical findings is a specific and legitimate reason for affording little weight to the opinion. *Matney v. Sullivan*, 981 F.2d 1016, 1019–1020 (9th Cir. 1992) (holding that inconsistency between clinical findings and doctor's opinion regarding plaintiff's work limitations is a specific and legitimate reason for disregarding physician's conclusions); *see also Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). Moreover, inconsistency between an examining consultant's opinion and the consultant's own notes is a specific and legitimate reason for rejecting it. *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020).

Here, substantial evidence supports the ALJ's finding that Dr. Higgins' own objective testing of Arias is inconsistent with his conclusion that Arias suffers from severe limitations in all areas of mental functioning. For instance, Dr. Higgins' testing of Arias in 2018 shows that although Arias "exhibited difficulty learning/encoding either auditory/ verbal information or visual information . . . [,] her performance on tests of delayed recall of either auditory/ verbal information or visual information placed her well within normal limits." (AR. 857.) Additionally, Dr. Higgins' notes indicate that Arias exhibited only "occasional word finding difficulties" and that, overall, Arias' verbal skills were still generally functional, "carrying on conversations with mild difficulty." (AR. 854.)

Arias directs the Court's attention to parts of Dr. Higgins' assessments of Arias demonstrating "several deficits in [her] neurocognitive functioning, especially on tests sensitive to right frontal and left frontal functioning." (Doc. 18 at 9.) These same tests,

however, also demonstrate that "Arias' performance placed her within normal limits, in the average range of functioning . . . on other neurocognitive measures," such as verbal comprehension, abstract reasoning with auditory/ verbal information, and delayed recall of auditory/ verbal information. (AR. 1103.) Where the evidence is susceptible to more than one rational interpretation, the Court must uphold the ALJ's conclusion. It was rational to find that Dr. Higgins' "severe limitations in *all* areas of mental functioning" opinion inconsistent with his own objective testing of Arias. Thus, the ALJ provided a specific and legitimate reason supported by substantial evidence to afford less weight to Dr. Higgins' opinions from May 15, 2018, and June 12, 2019.

2. <u>Dr. Higgins' Opinions from April 21, 2016, March 8, 2017, June 11, 2019, and October 29, 2020</u>

On April 21, 2016, Dr. Higgins opined that Arias is totally and permanently disabled and is not expected to be able to return to work. (AR. 852.) On March 8, 2017, Dr. Higgins opined that Arias is never expected to improve to a level where seeking work or maintaining work is possible. (AR. 921.) On June 11, 2019, Dr. Higgins opined that Arias is not expected to be able to return to work. (AR. 1104.) Last, on October 29, 2020, Dr. Higgins opined that Arias is prevented from working in a safe or effective manner due to her impairment. (AR. 1142.) The ALJ afforded "no special significance" to any of these four opinions because "the issue of disability is reserved to the Commissioner" and "[t]here is no indication that Dr. Higgins has any specialized vocational knowledge to assess the ability to work or the requirements of all jobs in the national economy." (AR. 32–33.)

Arias contends that although "the ALJ is not bound by a physician's opinion on an issue reserved to the Commissioner, the ALJ must still evaluate the opinion and provide specific and legitimate reasons, supported by substantial evidence to reject the opinion." (Doc. 18 at 11.) That is not so.

An opinion from a medical source is not necessarily a "medical opinion." Rather, some opinions from a medical source are "opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case." 20 C.F.R.

§ 404.1527(d). One such issue reserved to the Commissioner is whether a claimant is "unable to work." *Id.* (listing "statement by a medical source that you are 'disabled' or 'unable to work'" as an example of an opinion on issues reserved to the Commissioner); *Sager v. Colvin*, 622 Fed. Appx. 629 (9th Cir. 2015) (unpublished) (holding that opinion on whether claimant is unable to work is not a "'medical opinion' but rather a question reserved to the ALJ."). SSA regulations require that when an opinion from a medical source speaks to an issue reserved the ALJ, the ALJ must "not give any special significance" to that opinion. 20 C.F.R. § 404.1527(d)(3).

That is exactly what the ALJ did here. All four of Dr. Higgins' opinions speak to whether Arias is disabled and whether she is unable to work. Thus, all four opinions are on issues reserved to the ALJ. The ALJ did not err in affording each of these four opinions "no special significance."

### C. Arias' Symptom Testimony

To evaluate the credibility of a claimant's testimony regarding pain and symptoms, the ALJ must perform a two-step analysis. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). First, the ALJ evaluates whether the claimant has presented objective medical evidence of an impairment that "could reasonably be expected to produce pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). Second, if the claimant meets this first test and absent evidence of malingering, the ALJ then "can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Id.*; *Garrison*, 759 F.3d at 1015. This is the most demanding standard in Social Security cases. *Garrison*, 759 F.3d at 1015. "A finding that a claimant's testimony is not credible 'must be sufficiently specific to allow a reviewing court to conclude the [ALJ] . . . did not arbitrarily discredit a claimant's testimony regarding pain.'" *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 345–46 (9th Cir. 1991)).

Here, the ALJ found that although Arias' medically determinable impairments could reasonably be expected to cause her alleged symptoms, her statements concerning the

intensity, persistence, and limiting effects of those symptoms were not entirely consistent with other evidence in the record. (AR. 26.) Arias does not challenge the ALJ's analysis of her symptom allegations with respect to her seizure disorder; in fact, Arias concedes that her "seizures have been controlled with medication for many years." (Doc. 18 at 16.) Rather, Arias challenges the ALJ's credibility assessment of her testimony regarding her mental impairments. (*Id.*) Arias contends that her cognitive deficits and brain damage from earlier seizure activity are such that she is unable to sustain activity for a full workday and work week. (*Id.*). Accordingly, the Court only reviews the ALJ's credibility assessment of Arias' testimony regarding her mental impairments. *Cruz v. Int'l Collection Corp.*, 673,3d 991, 998 (9th Cir. 2012) ("We review only issues which are argued specifically and distinctly in a party's opening brief.").

"In reaching a credibility determination, an ALJ may weigh consistencies between the claimant's testimony and his or her conduct, daily activities, and work record, among other factors." *Bray v. Comm'r, Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009); *Ahearn v. Saul*, 988 F.3d 1111, 1116–17 (9th Cir. 2021) (holding that claimant's daily activities provided substantial evidence to support ALJ's conclusion that the record "was inconsistent with the severity of the limitations" claimant described in his testimony). Additionally, an ALJ may consider whether objective medical evidence supports the claimant's testimony. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

That is what the ALJ did here. The ALJ found that Arias' schools records, clinical records, psychological and psychometric testing, and activities of daily living ("ADLs") all appeared inconsistent with her claims of complete mental disability. (AR. 28–30.) For example, Arias' school records showed that, generally, she received Bs and Cs throughout high school and that she received a high school diploma. (AR. 28.) While records indicated that Arias received special education services, Arias also reported taking "normal classes." (*Id.*) Clinical records demonstrated that Arias functioned well, with only moderate limitations. (*Id.*) She was oriented to person, place, time, and situation. (*Id.*) Her language was intact for naming, comprehension, and repetition. (*Id.*) Moreover, her judgement and

reasoning were intact. (*Id.*) Arias also scored 30 out of 30 on the Mini-Mental Statement Examination. (AR. 29.) Although Arias reported anxiety and depression, treatment records indicated that she was being treated with medication and demonstrated improvement while on it. (*Id.*)

The ALJ also noted that objective psychological and psychometric testing belied Arias' allegation of complete disability. (*Id.*) From 2016 until 2019, Arias had the following full-scale intelligence quotients: 79 (borderline range), 87 (low average), 97 (average), 89 (low average), 97 (average), and 93 (average). (*Id.*) The ALJ reasoned that while these scores suggest that Arias will likely have some mental limitations, "they are not indicative of complete disability." (*Id.*)

Further, Arias' ADLs did support her claim total mental impairment. (AR. 29–30.) Arias reported that she is independent with her ADLs. (*Id.*) She performs household chores with reminders, can prepare simple meals, does puzzles and plays video games, goes grocery shopping alone, manages her own doctor's appointments, and spends time with friends. (*Id.*) Again, while Arias demonstrates some limitations, her ADLs do not support her allegation of complete disability. *See Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012) ("Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of totally debilitating impairment.").

In sum, the ALJ provided specific, cogent reasons for discrediting Arias' claim of complete mental impairment. Because those reasons are supported by substantial evidence in the record, the Court affirms the ALJ's credibility assessment.

**D. Lay Witness Testimony**

"In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006). An ALJ may not simply disregard competent lay witness testimony without comment, but instead "must give reasons that are germane to each witness." *Molina*, 674 F.3d at 1114. "Where the ALJ gives clear and convincing reasons

to reject a claimant's testimony, and where a lay witness' testimony is similar to the claimant's subjective complaints, the reasons given to reject the claimant's testimony are also germane to reject the lay witness testimony." *Caleb H. v. Saul*, No. 4:20-CV-5006-EFS, 2020 WL 7680556, at *8 (E.D. Wash. Nov. 18, 2020); *see also Molina*, 674 F.3d at 1114–15.

Here, the ALJ afforded the opinion of Arias' sister, Constanza Guerrero Diaz, limited weight, explaining that Diaz's statements pertaining to claimant's impairments and limitations were inconsistent with the objective medical evidence showing that claimant's seizures have been well controlled sine June 2014. (AR. 33.) Arias contends that ALJ failed to give germane reasons for discounting Diaz's testimony regarding Arias' mental impairments. (Doc. 18 at 17.) Arias argues the "ALJ failed to note that many of the limitations Diaz described, such as forgetfulness, difficulty understanding instructions, and difficulty with concentration and memory, are related to Arias' cognitive disorder and are not based on Arias continuing to have seizures." (*Id.*) Thus, Arias primarily challenges the ALJ's weighing of Diaz's testimony with respect to Arias' mental impairments—testimony that is similar to Arias' subjective complaints discussed above.

The Court already found that the ALJ had clear and convincing reasons to discredit Arias' testimony regarding the severity of her mental impairments. It follows then that the ALJ had germane reasons to discredit Diaz's testimony regarding the same impairments.

### E. ALJ's Step-Five Finding

At step five, the ALJ considers a claimant's RFC, age, education, and work experience to determine whether a claimant can make an adjustment to other work. 20 C.F.R. § 416.920(a)(4)(v). If a claimant can make the adjustment to other work, the claimant is not disabled. *Id*. To make this determination, the ALJ may rely on a vocational expert ("VE") to testify as to: "(1) what jobs the claimant, given [her RFC], would be able to do; and (2) the availability of such jobs in the national economy. At the hearing, the ALJ poses hypothetical questions to the [VE] that 'set out all of the claimant's impairments' for the [VE's] consideration." *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999).

Here, the ALJ asked the VE whether jobs exist in the national economy for an individual of Arias' age and with her education, work experience, and RFC. (AR. 21.) The VE testified that, given these factors and Arias' limitations, Arias would be able to perform the requirements of the following occupations: housekeeping cleaner, hand packager, and small products assembler. (*Id.*) Given that each of these jobs exist in significant numbers in the national economy, the ALJ concluded that Arias is not disabled. (*Id.*)

Arias argues the ALJ's step-five finding is not support by substantial evidence for three reasons: (1) in the ALJ's hypothetical questions to the vocational expert ("VE"), the ALJ omitted the limitations alleged by Arias and Diaz and assessed by Dr. Higgins; (2) Arias' RFC limitation requiring that she receive "redirection and reminders" at the start of each shift and throughout the day amounts to "a sheltered work setting," which is an accommodation that would deem Arias disabled; (3) two of the representative occupations—hand packager and small products assembler—provided by the VE are inconsistent with Arias' RFC limitation of only infrequent changes introduced gradually. The Court disagrees.

First, where the hypothetical the ALJ poses to the VE contains all of the limitations the ALJ finds credible and supported by substantial evidence in the record, the "ALJ's reliance on testimony the VE gave in response to the hypothetical . . . [is] proper." *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005); *see also Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175–76 (9th Cir. 2008) (holding that ALJ did not err in omitting limitations not supported by substantial evidence in the record from the hypothetical posed to the VE). As discussed above, substantial evidence supports the ALJ's credibility assessment of Dr. Higgins', Diaz's, and Arias' opinions. Accordingly, the ALJ did not err in omitting limitations that lack substantial evidence in the record from the hypothetical.

Second, Arias' argument that her RFC limitation—which she renames as an "accommodation"—deems her "disabled" is neither supported by SSA regulations nor the singular case Arias draws the Court's attention to. Arias points to *Cleveland v. Policy Management Systems Corp.* for the proposition that because she "cannot work without

accommodations, she is deemed disabled." 526 U.S. 795, 802–03 (1999). Arias misreads that case. The Supreme Court clarified that an individual who can perform the essential functions of her job but requires "reasonable accommodation" may be deemed "disabled" under the American with Disabilities Act of 1990 (ADA) but not necessarily under the SSA. *Id.* Unlike under the ADA, "when the [Social Security Administration] determines whether an individual is disabled for [benefit purposes], it does *not* take the possibility of 'reasonable accommodation' into account." *Id*. at 803. Arias does not point to any other authority supporting her argument here.

Moreover, the VE specifically opined that an individual with Arias' limitations—including her need for redirection and reminders—could perform work in the above-mentioned occupations. (AR. 134.) Arias neither challenges this part of the VE's testimony nor the VE's qualifications to make this determination. *Terry v. Saul*, 998 F.3d 1010, 1013 (9th Cir. 2021) ("ALJ's reliance on qualified, cogent, and uncontradicted expert testimony generally constitutes substantial evidence in support of the ALJ's finding.") (citing *Ford*, 950 F.3d at 1159). Substantial evidence supports the ALJ's determination that Arias can make successful adjustment to other work in light of her limitations.

Finally, the Court need not reach the issue of whether two of the representative occupations—hand packager and small products assembler—are inconsistent with Arias' RFC limitations because the alleged error, if any, is harmless. *Molina*, 674 F.3d at 1115 ("[A]n ALJ's error is harmless where it is consequential to the ultimate nondisability determination.") (citations and internal quotation marks omitted). Regardless of whether these occupations are indeed inconsistent with her RFC limitations, the ALJ found that Arias would be able to work as a housekeeping cleaner, an occupation with 400,000 jobs nationwide. (AR. 35.) Arias does not challenge the ALJ's finding with respect to this occupation. And where a claimant can make successful adjustment to other work that exists in significant numbers in the national economy, an ALJ will find the claimant "not disabled." 20 C.F.R. § 416.960(c). Thus, substantial evidence supports the ALJ's step-five determination of "not disabled."

**IT IS ORDERED** that the ALJ's decision is **AFFIRMED.** The Clerk is directed to enter judgment accordingly and terminate this case.

Dated this 29th day of September, 2023.

Douglas L. Rayes
United States District Judge